UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:05-cv-162-R

BOBBI McGONIGLE and
KYLE McGONIGLE,                                                                              PLAINTIFFS

v.

WARREN L. WHITEHAWK,
BERTRAM DRILLING, INC., and
ST. PAUL FIRE AND MARINE INSURANCE CO.,                                  DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Bertram Drilling, Inc.'s ("Bertram") Motion for Summary Judgment (Docket #13). The Plaintiffs, Bobbi McGonigle ("Mrs. McGonigle" or "McGonigle") and Kyle McGonigle ("Mr. McGonigle") have responded (Docket #17), and Bertram has replied to that response (Docket #33). This matter is now ripe for adjudication. For the following reasons, the Defendant's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

On the evening of November 23, 2004, at around midnight, co-Defendant Warren Whitehawk ("Whitehawk") was driving a work truck owned by Bertram that rammed into the rear of McGonigle's vehicle while she was stopped at a traffic light in Paducah, Kentucky. The impact of the crash forced McGonigle's vehicle into a second collision with the car in front of hers at the light. McGonigle's vehicle as well as the vehicle her car was forced into were both totally destroyed. McGonigle went by ambulance to Western Baptist Hospital in Paducah, Kentucky, where she was treated for her injuries.

McGonigle alleges that both Whitehawk and his co-worker and passenger, Jeremy

Belden ("Belden"), were intoxicated at the time of the accident. Following the impact, both men fled the scene of the accident on foot and neither of them notified the authorities about the crash. The Bertram truck was left on the road. Later that evening, investigating Officer Greg Reynolds ("Officer Reynolds") went to the Days Inn Motel where Whitehawk and Belden were staying. Officer Reynolds found Belden at the motel "clearly intoxicated," but Whitehawk was not at the motel at that time.

Officer Reynolds executed an affidavit and criminal complaint against Whitehawk, alleging that he unlawfully left the scene of his accident with McGonigle; failed to stop and render aid or assistance; and failed to report the accident to the proper authorities, in violation of KRS §189.580(1). In addition, the complaint stated that Whitehawk "feloniously and wantonly, under circumstances manifesting extreme indifference to the value of human life, did engage in conduct which created a substantial danger of death or serious physical injury to the victims," in violation of KRS §508.060. The complaint also noted that McGonigle believed Whitehawk to be intoxicated at the time of the accident. On November 25, 2004, Bertram terminated Whitehawk for driving a company vehicle while intoxicated. On December 7, 2004, Whitehawk was found guilty of leaving the scene of an accident and both first and second degree wanton endangerment.

At the time of the accident, Whitehawk was employed by Bertram as a drill helper. Bertram is a Wyoming corporation with its principal place of business in Montana. Bertram employees, including Whitehawk, were in the area working at a project site for Bertram in Calvert City, Kentucky. Bertram sponsored Whitehawk so that he could drive Bertram commercial vehicles in interstate travel. The company permitted Whitehawk to drive the

company vehicle that was used during the accident. Prior to the both his employment with Bertram and the accident, Whitehawk had been convicted twice for driving under the influence in December 1996, and February 1998.

The Plaintiffs have asserted a vicarious liability claim against Bertram seeking to recover compensatory and punitive damages. The Defendant contends that the Plaintiffs cannot recover against it because Whitehawk's actions were outside the scope and course of his employment with Bertram. The Defendant further argues that even if Whitehawk was within the scope and course of his employment at the time of the accident, the Plaintiffs cannot recover punitive damages because no viable claim exists against Bertram and Bertram never authorized, ratified or should have anticipated Whitehawk's actions.

The Court also notes that the Plaintiff has conducted a minimal amount of discovery in this matter, and counsel for the Plaintiff has only submitted the deposition of Mrs. McGonigle and some written documents at the close of the discovery deadline.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

Bertram asserts that the Plaintiffs have failed to establish that Whitehawk's actions were within the scope and course of his employment with Bertram on the night of the accident. In addition, the Defendant contends that even if Whitehawk was working within the scope and course of his employment, the Plaintiffs cannot recover punitive damages from Bertram. The Court shall address each of these issues separately.

### 1. Within the Course and Scope of His Employment with Bertram

In Kentucky, the negligence of an employee imputes to his/her employer only when the

employee "was acting within the scope of his employment and in the furtherance of the [employer's] business." *Wilson v. Deegan's Adm'r*, 139 S.W.2d 58, 60 (Ky. 1940). The Court in *Wilson* went on to state that:

> [a]s a general rule, the master is not liable for the servant's negligence while traveling to and from means although the servant is driving the master's car, but the circumstances may be such that the servant, by the use of the car, is furthering his master's business as where he is permitted to drive the car to and from his meals for the purpose of enabling him to reach his work earlier. *If the loan is made merely to accommodate the servant the master is not liable*, but if it is made for the purpose of facilitating the employer's work then the servant, while so using the car, acts within the scope of his employment. (emphasis added).

*Wilson* at 60. In analyzing whether or not an employee is acting within the course and scope of his/her employment, Courts must determine whether the employee's conduct was in anyway commenced to benefit the employer. *Coleman v. U.S.*, 91 F.3d 820, 825-26 (6th Cir. 1996). In *Coleman*, the Sixth Circuit Court of Appeals set out four factors to aid in determining whether a particular employee's action is within the scope of employment, including: (1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred substantially within the authorized spacial and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, was expected in view of the employee's duties. *Coleman* at 824. The Court shall address each of these factors individually.

### i) Similar Conduct

In interpreting Kentucky law, the Sixth Circuit Court of Appeals, in *Coleman*, held that the duties of an employee includes those that he/she is either "expressly" or "impliedly" hired to perform. *Id.* at 824. In determining whether the employee was acting within the scope of his employment, the Court stated that it must examine the "responsibilities as a [] worker holistically

5

to determine whether they would reasonably include the type of activity at issue." *Id.*

At the time of the accident, Whitehawk was employed by Bertram as a drill helper. Driving the Bertram truck was not an explicit part of Whitehawk's job responsibilities. Although Bertram aided Whitehawk in his Class B-1 CDL certification (which was not needed to drive the vehicle that Whitehawk drove the evening of the accident) so that he could drive Bertram's commercial vehicles in interstate travel, and Whitehawk could get permission from a supervisor to use the vehicle, he was not hired to drive the company vehicle to and from the work site. Driving the company vehicle was not understood to be part of his job responsibilities. Here, as noted in *Wilson*, where the Court stated that "[i]f the loan is made merely to accommodate the servant the master is not liable," the vehicle was not loaned to Whitehawk on the evening of the accident for work related purposes, but was provided to accommodate Whitehawk on his day off. *Wilson*, 139 S.W.2d at 60. Accordingly, this factor does not support that Whitehawk was acting within the scope and course of his employment on the night of the accident.

### ii) Spacial and Temporal Limits of Employment

The accident in this matter occurred after regular work hours, near midnight, on a day that Whitehawk did not work. As such, Whitehawk had conducted no work-related activities at the job site on the day of the accident. Accordingly, this factor does not support that Whitehawk was acting within the scope and course of his employment on the night of the accident.

### iii) In Furtherance of Bertram's Business

The Sixth Circuit Court of Appeals, in applying Kentucky law in the cases of *Chistian v. United States* and *Flechsig v. U.S.*, held that when determining whether the employee's conduct

furthers the business of the employer, the "conduct in question need only be done in part to benefit the employer." *Coleman* at 825-26 (citing *Flechsig v. U.S.*, 991 F.2d 300, 303 (6th Cir. 1993); *Christian v. U.S.*, 184 F.2d 523, 525 (6th Cir. 1950)("[t]o exonerate the master from liability, it is essential that deviation or departure by the servant from his master's business was for purposes entirely personal to the servant.")). However, if an employee "acts from purely personal motives... which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable." *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005); *see also Riney v. Mendenhall,* 2007 WL 505767, *4 (W.D.Ky. Feb. 13, 2007). The Defendant asserts that Whitehawk driving the Bertram vehicle was not in furtherance of business because the mere use of a company vehicle does not automatically indicate that an employee acts within the scope of his/her employment and that Whitehawk was using the vehicle for personal reasons not related to his employment.

In support of its argument that the conduct of Whitehawk was not in furtherance of Bertram's business, the Defendant cites the Kentucky Court of Appeals case of *Horne v. Hall*, 246 S.W.2d 441, 442 (Ky. 1952). In *Horne*, the Court held that an employee whose job responsibilities included driving the employer's truck to haul coal from the mines to the place of business, was not acting within the scope of his employment when he took the vehicle to get repaired after hours without any instructions of his employer. *Id.*; *see also Zumwalt v. Harper*, 218 S.W.2d 955, 957-58 (Ky. 1949)(an employee who was instructed by his employer to deliver potatoes in employer's truck to customer and to return to employer's farm, and who without employer's knowledge or consent took customers one mile beyond employer's farm, at which destination truck collided with automobile, was engaged in voluntary enterprise of his own so

7

that employer was not liable for damages arising out of collision).

Here, similar to *Horne* and *Zumwalt*, Whitehawk was not advancing Bertram's business interest when he drove the vehicle on the night of the accident because he was acting on his own behalf, not on behalf of Bertram. While the Defendant admitted that the employees relied upon the work vehicles when they worked on out-of-town projects and the employees were not restricted to only go between the motel and the job site in the work vehicle, any acts taken for purely personal reasons are not within the course of the employment. *See Patterson*, 172 S.W.3d at 369. In addition, "[i]f the loan is made merely to accommodate the servant the master is not liable." *Wilson*, 139 S.W.2d at 60.

Here, the primary purpose of Whitehawk using the vehicle on the evening of November 23, 2004, was for his own personal benefit, as he had the day off on the evening of the accident; he was driving the vehicle late at night past regular business hours; and the activity he was engaged in prior to the accident was not related to his employment with Bertram. Accordingly, this factor supports that Whitehawk was not acting within the scope and course of his employment on the night of the accident.

### iv) Expected Conduct in View of the Employee's Duties

In looking at this factor, courts should refer back to their analysis used in the first factor to help determine whether the conduct was expected in light of the employee's duties. *Coleman*, 91 F.3d at 826. As stated *supra*, driving the Bertram truck was not an explicit part of Whitehawk's job responsibilities. In looking at whether the actions by Whitehawk were expectable, there is nothing that stems from Whitehawk's job responsibilities to suggest he would commit the accident in the manner in which he did so; on his day-off, after regular

working hours. Accordingly, this factor supports that Whitehawk was not acting within the scope and course of his employment on the night of the accident.

### v) Consideration of all Four (4) Factors

In looking collectively at the four (4) factors, the Court finds that the factors do not favor vicarious liability in this matter because Whitehawk was not acting within the scope and course of his employment at the time of the accident. Whitehawk was off-duty at the time of the accident, and he was not driving the vehicle to further a purpose of Bertram, but instead was driving for his own personal motives. Therefore, the Court finds that Whitehawk was not acting within the scope and course of his employment with Bertram at the time of the accident.

### 2. Recovery of Punitive Damages from Bertram

In Kentucky, the recovery of punitive damages are governed by KRS §411.184. *See Stewart v. Estate of Cooper*, 102 S.W.3d 913, 915-16 (Ky. 2003). Here, in order for the Plaintiffs to recover punitive damages against Bertram, the Plaintiffs must demonstrate that not only did Whitehawk act grossly negligent during the scope and course of his employment with Bertram by driving while intoxicated, but also that Bertram either authorized or should have anticipated Whitehawk's wrongful conduct. *See* KRS §411.184(2); KRS §411.184(3).[1] In a corresponding Memorandum Opinion, the Court determined that the actions of Whitehawk may have amounted to gross negligence for purposes of submitting a punitive damages issue to the finder of fact. In the instant opinion, the Court has determined that Whitehawk was not acting

---

[1] The Court concurs with the Defendant's analysis and application of the Kentucky Supreme Court case of *Williams v. Wilson*, 972 S.W.3d 260 (Ky. 1998). The Court in *Williams* did not invalidate KRS §411.184 in its entirety, only the definition of "malice" in part (1)(c). Further, the Court agrees with the Defendant in regards to any constitutional challenge made by the Plaintiffs in its response, and recognizes that the Plaintiffs have not sufficiently brought forth any constitutional challenge to KRS §411.184. As such, the Court will apply the statute as written.

within the scope of his employment with Bertram while driving the Bertram truck.  For purposes of this analysis the Court will assume that Whitehawk was acting within the scope of his employment, and as such, the Court must determine whether Bertram should have anticipated Whitehawk's conduct.

KRS §411.184(3) states that "[i]n no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question."  As noted by Justice Cooper, "Kentucky is the only state with a statute that so broadly limits vicarious liability for punitive damages." *Berrier v. Bizer*, 57 S.W.3d 271, 283 (Ky. 2001).  Very few cases on record have recognized vicarious liability for punitive damages. *See Estate of Presley v. CCS of Conway*, 2004 WL 1179448, *4 (W.D.Ky. 2004).  In *Kentucky Farm Bureau Mut. Ins. Co. v. Troxell*, the Kentucky Supreme Court upheld the use of a jury instruction permitting the award of punitive damages against the insurance company because the company was aware that its claims adjuster had previously used unacceptable methods for handling claims and knew of the pattern of unacceptable behavior practiced by the agent. *Kentucky Farm Bureau Mut. Ins. Co. v. Troxell*, 959 S.W.2d 82, 85-86 (Ky. 1997).  The Court in *Troxell* emphasized that Kentucky Farm Bureau Mutual Insurance Company knew of an inappropriate *pattern* conducted by its claims adjuster while the employee *worked for* the employer. *Troxell* at 86 (emphasis added).  As such, the Court found that the employer should have anticipated the grossly negligent conduct of its employee. *Id.*

In the instant matter, in contrast to *Troxell*, Whitehawk had not engaged in a pattern of drunk driving while employed by Betram.  Prior to his employment at Bertram, in 1996 and

10

1998, Whitehawk was convicted of driving under the influence.  Bertram knew of these instances when they assisted Whitehawk in obtaining his truck certification.  However, a period of six and one-half (6.5) years passed between his last DUI and the incident in question.  This time duration suggests that unlike the conduct of the claims adjuster in *Troxell*, these two (2) instances do not qualify as a pattern for purposes of providing a punitive damages instruction to the finder of fact.  Further, as stated *supra*, these two (2) instances did not occur while Whitehawk was employed by Bertram, making it less likely for Bertram to have anticipated the grossly negligent conduct.

As expressed by Justice Cooper, Kentucky limits the applicability of vicarious liability for punitive damages.  In the instant case, the Plaintiffs have not demonstrated that Bertram should have anticipated the conduct of Whitehawk on the night of the accident. *See Steinhoff v. Upriver Restaurant Joint* Venture, 117 F.Supp.2d 598, 606 (E.D.Ky. 2000).  Accordingly, the Court finds that the Plaintiffs cannot recover punitive damages from Bertram.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED**.  The Court finds that co-Defendant Warren Whitehawk was not acting within the scope of his employment while operating the Bertram vehicle on the evening of November 23, 2004.  Additionally, the Plaintiffs cannot recover punitive damages under a theory of vicarious liability against Bertram.  Accordingly, all claims against Bertram are **DISMISSED**.

An appropriate order shall issue.